**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

KNIGHT SPECIALTY INSURANCE COMPANY
4750 Wilshire Boulevard, Suite 111
Los Angeles, CA 90010

Plaintiff,

v.

BRUEN HOLDINGS URBAN RENEWAL LLC f/k/a 50-56 BRUEN HOLDINGS LLC
246 E. 6th Avenue
Roselle, NJ 07203,

and

BAYVIEW CONSTRUCTION LLC
246 E. 6th Avenue
Roselle, NJ 07203,

and

CEMENT TECH, INC.
1 Gateway Center, Suite 2600
Newark, NJ 07102,

Defendants.

No. 1:26-cv-12805

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Knight Specialty Insurance Company ("Knight") brings this action seeking a declaratory judgment regarding its obligations, if any, to Bruen Holdings Urban Renewal LLC f/k/a 50-56 Bruen Holdings LLC ("Bruen") and Bayview Construction LLC ("Bayview") (together, "Bruen/Bayview") under a commercial general liability insurance policy that Knight issued to Cement Tech, Inc. ("Cement Tech"). Specifically, Knight seeks a declaration from the

Court that it has no duty to defend or indemnify Bruen or Bayview in the Underlying Lawsuit (as defined below). In support of the relief sought herein, Knight alleges as follows:

**The Parties**

1. Knight is an corporation organized and existing of the laws of the state of Delaware with its principal place of business at the address set forth in the caption above.

2. Defendant Bruen is a New Jersey limited liability company with its principal place of business at the address set forth in the caption above.

3. Defendant Bruen is not a citizen of either Delaware or California.

4. Defendant Bayview is a New Jersey limited liability company with its principal place of business at the address set forth in the caption above.

5. Defendant Bayview is not a citizen of either Delaware or California.

6. Defendant Cement Tech, Inc. is a New Jersey corporation with its principal place of business at the address set forth in the caption above.

7. Defendant Cement Tech is a citizen of New Jersey.

**Jurisdiction and Venue**

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are of completely diverse citizenship and the amount in controversy set forth herein exceeds $75,000, exclusive of interests and costs.

9. This Court has jurisdiction to grant the relief sought herein pursuant to 28 U.S.C. § 2201 *et seq.*

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because all Defendants reside within the jurisdiction of this Court and a substantial part of the events giving rise to this action occurred within New Jersey.

## Facts

**The Underlying Lawsuit**

11. On August 16, 2024, Ruben Soares da Costa filed a lawsuit in the Superior Court of New Jersey, Law Division, Essex County, captioned *Ruben Soares da Costa v. 50–56 Bruen Holdings, LLC, Bruen Holdings Urban Renewal, LLC, KG Concrete Pumping, Touro Concrete, LLC, and John Doe Corporations 1 – 5*, docket number ESX-L-005653-24 (the "Underlying Lawsuit"). (A copy of the original Complaint from the Underlying Lawsuit is attached hereto as **Exhibit A**.)

12. On October 1, 2024, Bruen filed an Answer to the Complaint in the Underlying Lawsuit, including a Third-Party Complaint against Cement Tech. (A copy of Bruen's Answer to the original Complaint in the Underlying Lawsuit is attached hereto as **Exhibit B**.)

13. On December 9, 2024, Mr. da Costa, with leave of court, filed an Amended Complaint in the Underlying Lawsuit, adding Bayview and Cement Tech as defendants to his claims. (A copy of the Amended Complaint from the Underlying Lawsuit is attached hereto as **Exhibit C**.)

14. On March 28, 2025, Mr. da Costa, again with leave of Court, filed a Second Amended Complaint ("SAC") in the Underlying Lawsuit, adding Raptor Concrete as a defendant to his claims. (A copy of the SAC from the Underlying Lawsuit is attached hereto as **Exhibit D**.)

15. The SAC is the operative complaint in the Underlying Lawsuit.

16. On April 11, 2025, Bruen/Bayview filed its Answer to the SAC (a copy of which is attached hereto as **Exhibit E**).

17. According to the SAC, on or about January 2, 2024, Mr. da Soares was working as an employee of Touro Concrete, LLC working on a construction project or site at 59–65

McWhorter Street, Newark, New Jersey when "an unattended a dormant cement hose was activated with concrete, struck [him,] causing him to fall to the floor/ground" and sustain injuries. (**Exhibit D**, First Count ¶ 19.)

18. Mr. da Costa alleges that Bruen, Bayview, and Cement Tech, as well as all other defendants in the Underlying Lawsuit, each had an independent duty "to maintain control, supervise, inspect and/or construct the premises and work site in a safe and proper manner and to provide and to provide [sic] a safe place to work so that the plaintiff and other workers thereat would not incur injuries thereat." (*Id.* ¶¶ 12–18.)

19. Mr. da Costa alleges that all defendants in the Underlying Lawsuit were each independently negligent in a manner that led to the incident and his alleged injuries, specifically alleging as follows:

> The defendants and/or defendants' subcontractor(s) failed to provide a proper and safe worksite and failed to maintain, supervise, inspect and construct the premises and work site in a safe and proper manner. Defendants and/or defendants' subcontractor(s) were also negligent in the control, performance, management and conduct of its work; in failing to properly keep and maintain the construction site in a safe manner; in failing to properly keep and maintain the equipment in use in a safe manner; in failing to require work procedures to be done in a safe manner; in failing to keep the equipment and work area safe for use by plaintiff; in failing to provide proper protection and equipment and maintain safety during construction of the subject building; in failing to provide the proper safety devices for the plaintiff's protection; the defendants individually and/or by and through their agents, servants and/or subcontractor(s) were also negligent in the ownership, operation, maintenance management and control of the concrete pump truck and/or concrete pump, and in the operation, control, maintenance, management and inspection of the construction site at 59-65 McWhorter Street, Newark, New Jersey; in creating a trap and creating the false appearance of safety; in failing to give plaintiff any notice or warning of said conditions; in not providing proper maintenance at the aforesaid location; in permitting and allowing said conditions to exist and continue; in maintaining and permitting the existence of a nuisance and a

> hazard; in failing to exercise such care and caution as were reasonably required for the safety of persons on the premises; in failing to take reasonable precautions to protect plaintiff from the injuries he sustained; in failing to provide plaintiff with a reasonable and proper protection; in failing to provide proper safety inspections and/or inspections of the work being performed to determine if proper and correct safety was being practices …. In addition, the defendants were negligent and abrogated their legal responsibilities in failing to comport, comply and satisfy CFR§1926.16 (a) through CFR§1926.16 (d) and such other OSHA regulations which effectively state, *inter alia*, that in no case shall a prime contractor, who subcontracts out work, be relieved of overall responsibility for compliance with certain OSHA safety standards applicable to a construction project.
>
> * * *
>
> The defendants were negligent in hiring incompetent and/or improperly trained contractors; in failing to properly train and/or in failing to require proper training; in failing to require work procedures to be done in a safe manner; in failing to provide the proper safety devices for the plaintiff's protection; in failing to give plaintiff any notice or warning of said condition; in not providing proper maintenance at the aforesaid location; in not providing proper fall prevention at the aforesaid location; in not properly inspecting and in not ascertaining the fact that one or more of the contractors had provided unsafe and improper equipment and/or personnel; in failing to furnish and provide properly working safety devices; in failing to provide proper safety inspections and/or inspections of the work being performed to determine if proper and correct safety was being practiced; in allowing, creating and permitting an unattended and dormant cement hose to be activated with concrete, striking the plaintiff, … causing him to fall to the floor/ground and sustain the injuries and damages hereinafter set forth.

(*Id.* First Count ¶ 19, Second Count ¶ 1.)

20. Mr. da Costa's alleged injuries are such that the potential exposure to the defendants in the Underlying Lawsuit, together with defense costs, well exceeds $75,000.00.

**The Subcontract Agreement Between Cement Tech and Bayview**

21. On August 17, 2023, Cement Tech and Bayview entered into a Subcontract Agreement (a copy of which is attached hereto as **Exhibit F**).

22. The Subcontract Agreement provided for Cement Tech "[t]o construct Foundation plan dated 4.28.23 and Superstructure according to structural plan dated November 30, 2020. Including slabs, concrete stairs, columns, and shear walls." (**Exhibit F** at 1.)

23. Article III of the Subcontract Agreement, titled "Indemnity and Insurance," provides as follows, in pertinent part:

> Indemnitees. "Indemnitees" shall mean and include: BAYVIEW CONSTRUCTION, LLC, including all officers, employees, affiliates, subsidiaries, agents and assigns thereof; and, the Owner of the Project, the General Contractor for the Project, the Architect (and in the case of the Architect, indemnity does not apply to claims from Architect's errors or omissions), and any and all indemnitees identified in the Original Contract entered into by BAYVIEW CONSTRUCTION, LLC, all of the respective principals, partners, officers, directors, agents, successors, stockholders, and employees of each of them.
>
> To the greatest extent permitted by law, Subcontractor shall indemnify, defend and hold the Indemnitees harmless from and against any and all claims, losses, damages, causes of action, liens, encumbrances, penalties, fines, suits proceedings, demands, costs and expenses (including attorney's fees and disbursements) of whatsoever kind of nature, including bodily injury or death to any person(s), including Subcontractor's employees, Subcontractor's subcontractors or others, and including any breach of or other failure to perform under this Agreement, and also including any and all damage, destruction and/or loss of use of real property or other tangible property, (all collectively, "Claims") that in any way arise out of or in connection with the Subcontract Work and/or any act or omissions of Subcontractor, or anyone subcontracted or otherwise hired or employed (whether directly or indirectly) by or through the Subcontractor, or act or omission of anyone else from whom the Subcontractor or any of them may be liable or responsible. All indemnity obligations under this Agreement shall be enforced to the greatest amount of indemnity in favor of BAYVIEW CONSTRUCTION LLC. Furthermore, it is understood and agreed that all obligations to indemnify, defend and hold harmless set forth herein shall be deemed in full force and effect and retroactively enforced, as of the earlier of: the date set forth herein; the retroactive date set forth in any subsequent written Addendum signed by the Parties; or, the date that Subcontractor begins any Work or involvement in the Project. This indemnity

> agreement shall survive the completion of the Work specified herein and in the Original Contract and/or Contract Documents.

(*Id.* at 4 §§ 3.1–3.2)

24. Although Article III of the Subcontract Agreement is titled "Indemnity and Insurance," there is no language in Article III of the Subcontract Agreement that speaks to insurance or required Cement Tech to procure additional insured status for Bayview or Bruen on any policy of insurance it held.

25. Section 11.4 of the Subcontract Agreement provides as follows:

> Captions. The captions titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purposes, nor do they in any way alter, add to, subtract from or give any meaning or context to the language that follows or precedes.

(*Id.* at 7 § 11.4.)

**The Second Subcontract Agreement**

26. Upon information and belief, at some time after the alleged January 2, 2024, incident in which Mr. da Costa was allegedly injured as he claims in the Underlying Lawsuit, Bruen/Bayview and Cement Tech entered into a second Subcontract Agreement (Contractor/Subcontractor) (the "Rider," a true and correct copy of which is attached hereto as **Exhibit G**).

27. The introductory paragraph of the Rider provides:

> The terms and conditions and requirements of this Rider are in addition to the terms, conditions & requirements of the Subcontract Documents. In the event there are any inconsistencies between the terms, conditions or requirements of the Subcontract Documents and those of the Rider, the more stringent of the two shall apply and be binding on the Subcontractor and its carrier[.]

(**Exhibit G** at 1.)

28. Although the Rider purports to be binding on Cement Tech's "carrier," no insurance carrier, and specifically not Knight, executed or agreed to the terms of the Rider.

29. Unlike the original Subcontract Agreement between Cement Tech and Bayview executed August 17, 2023, the Rider does include a provision requiring Cement Tech to procure additional insured coverage for Bruen/Bayview, as follows:

> The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name …, and shall specifically include coverage for completed operations. ….

(*Id.* at 1 § 2.1.)

30. Upon information and belief, Bruen/Bayview and Cement Tech executed the Rider after the incident involving Mr. da Costa and backdated the Rider to January 1, 2024 (the day before the incident) in an effort to manufacture insurance coverage for Bruen/Bayview as additional insureds for the incident.

31. On February 8, 2024—over a month *after* the alleged incident causing Mr. da Costa's alleged injuries—Cement Tech's broker, HML Brokerage LLC, issued a Certificate of Liability Insurance to Bruen/Bayview (a copy of which is attached hereto as **Exhibit H**).

32. The Certificate of Liability Insurance includes the following bold, all-capital disclaimer:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.**

(**Exhibit H**.)

33. The Certificate of Liability also includes the following disclaimer:

> **IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).**

(*Id.*)

34. Notwithstanding these conspicuous disclaimers, the Certificate of Liability Insurance purports to provide: "The Certificate holder, and any indemnified parties are included in the GL policy as additional insureds for ongoing and completed operations on a primary non-contributory basis as per written contract. The General Liabit [sic] polcoly [sic] includes an endorsement for waiver of subrogation." (*Id.*)

35. Knight did not issue, adopt, or agree to the language of the Certificate of Liability Insurance.

**The Policy**

36. Knight issued a commercial general liability insurance policy, policy number TMKS00444-00 (the "Policy," a copy of which is attached hereto as **Exhibit I**) to Cement Tech, with a policy period of December 18, 2023 to December 18, 2024.

37. The Policy provides commercial general liability insurance, and specifically Coverage A – Bodily Injury and Property Damage Liability, pursuant to the following insuring agreement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

> against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ….

(**Exhibit I** at KSIC014.)

38. Section II of the Policy's Commercial General Liability Coverage Form (the "CGL Form"), titled "Who Is An Insured," provides that the following are insureds under the Policy:

> If you are designated in the Declarations as:
>
> *  *  *
>
> **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to liability as stockholders.

(*Id.* at KSIC022.)

39. Cement Tech is identified in the Policy Declarations as a corporation. (*Id.* at KSIC012.)

40. Section II of the CGL Form also provides that Cement Tech's "volunteer workers," "employees," and "executive officers" (all as defined in the CGL Form) are insureds, as well as Cement Tech's real estate managers and any organization it might acquire or form and maintain ownership of, under certain circumstances, as more specifically described in the Policy. (*Id.* at KSIC022–23.)

41. Neither Bruen nor Bayview falls into any of the categories of insureds described in Section II of the CGL Form.

42. The Policy includes endorsement form TMGL 172 10/11, which provides as follows with respect to those who qualify as an insured under the CGL Form:

> **Section II - Who is An Insured** is amended to include as an insured any person or organization for whom you are performing operations *when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy*. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.
>
> A person's or organization's status as an insured under this endorsement ends when your operations for that additional insured are completed.

(*Id.* at KSIC051 (italicized emphasis added).)

43. The CGL Form excludes from coverage liability for contractual liability, with a carveout for liability assumed in an "insured contract" (as defined in the Policy), as follows, in pertinent part:

> This insurance does not apply to:
>
> * * *
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. ….

(*Id.* at KSIC015.)

44. Pursuant to endorsement form CG 24 26 04 13, included in the Policy, an "insured contract" as defined as, in relevant part:

> That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(*Id.* at KSIC046.)

**COUNT I – DECLARATORY JUDGMENT**
**(No Duty to Defend or Indemnify Bruen/Bayview as an Additional Insured)**

45. Knight incorporates the foregoing paragraphs of this Complaint as if set forth fully herein.

46. The original Subcontract Agreement between Bayview and Cement Tech did not require Cement Tech to provide additional insured coverage to Bruen/Bayview.

47. Upon information and belief, only *after* the alleged incident on January 2, 2024 that is the subject of the Underlying Lawsuit did Bruen/Bayview and Cement Tech execute the Rider and backdate the Rider to January 1, 2024.

48. While Bruen/Bayview and Cement Tech were free to bind themselves to an earlier effective date of *Cement Tech's* obligations, they could not bind Knight and provide for Bruen/Bayview to receive the benefit of additional insured status under the Policy with respect to a loss that had already occurred. *See, e.g., I.T.N. Consolidators, Inc. v. N. Marine Underwriters Ltd.*, 699 F. App'x 880, 884–85 (11th Cir. 2017); *Peleus Ins. Co. v. United Specialty Ins. Co.*, No. 24 Civ. 1398 (KPF), 2026 WL 810247, 2026 U.S. Dist. LEXIS 60293, at *19–20 (S.D.N.Y.

Mar. 23, 2026); *TMH Med. Servs. LLC v. Nat'l Union Fire Ins. Co.*, 347 F. Supp. 3d 1089, 1103 & nn. 9–10 (M.D. Fla. 2018).

49. The Certificate of Liability Insurance does not confer any rights, including status as an additional insured, on Bruen/Bayview, both because: (a) pursuant to the disclaimers on the Certificate of Liability Insurance and applicable law, such certificates do not confer any rights; and (b) even if the Certificate of Liability Insurance could confer rights on Bruen/Bayview, it was issued over a month after the incident that is the subject of the Underlying Lawsuit.

50. Bruen/Bayview is not an additional insured under the Policy for purposes of the Underlying Lawsuit.

WHEREFORE, Plaintiff Knight demands judgment in its favor and against Defendants Bruen/Bayview and Cement Tech in the form of a declaration that Knight has no duty to defend or indemnify Bruen/Bayview as an additional insured in the Underlying Lawsuit.

**COUNT II – DECLARATORY JUDGMENT**
**(No Duty to Indemnify Cement Tech for Any Indemnity It May Owe to Bruen/Bayview for Bruen/Bayview's Own Negligence)**

51. Knight incorporates the foregoing paragraphs of this Complaint as if set forth fully herein.

52. To the extent that Cement Tech has an obligation to indemnify Bruen/Bayview pursuant to either the Subcontract Agreement or the Rider, such obligation only meets the definition of an "insured contract" under the Policy to the extent permitted by applicable law.

53. The Subcontract Agreement provides for New York law to govern its terms. (**Exhibit F** at 7 § 11.2.)

54. New York law bars contractual indemnity of a contractor by a subcontractor for the contractor's own negligence. N.Y. Gen. Oblig. Law § 5-322.1(1).

55. To the extent Cement Tech is found liable for indemnity to Bruen/Bayview for Bruen/Bayview's own negligence, notwithstanding that such a finding would be erroneous as a matter of law, the Subcontract Agreement and Rider do not meet the Policy definition of an "insured contract."

56. Under no circumstances would Knight have a duty to indemnify Cement Tech for its indemnity obligation to Bruen/Bayview to the extent of Bruen/Bayview's own negligence.

WHEREFORE, Plaintiff Knight demands judgment in its favor and against Defendants Bruen/Bayview and Cement Tech in the form of a declaration that Knight has no duty to indemnify Cement Tech for indemnity it may be found to owe Bruen/Bayview arising from or relating to Bruen/Bayview's own negligence.

**McAngus Goudelock & Courie LLC**

Date: September 29, 2026 By: ______________________________

Ross G. Currie, Esq.
2000 Market Street, Suite 2850
Philadelphia, PA 19103
(484) 406-4200
ross.currie@mgclaw.com

*Attorneys for Plaintiff Knight Specialty Insurance Company*